This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, LeRoy Charley, Jr., appeals from the decision of the Lorain County Court of Common Pleas. We affirm.
 I.
On September 26, 2000, the Lorain County Grand Jury indicted Mr. Charley on four counts of rape, in violation of R.C. 2907.02(A)(1)(b). The rape charges related to K.L., a child who was eleven years old and in the fifth grade at the time the alleged rape incidents occurred. On October 17, 2000, Mr. Charley was arraigned and appointed counsel, and the first pretrial hearing was held. On November 13, 2000, a second pretrial hearing was held. At this time, Mr. Charley requested new counsel; that motion was denied.
On December 13, 2000, Mr. Charley's trial counsel filed a motion to withdraw as counsel, and, on December 18, 2000, a hearing was held on the matter. On December 19, 2000, the trial court denied the motion. Mr. Charley filed a notice of alibi on December 26, 2000. On December 29, 2000, the state filed a motion to amend the indictment. This motion was granted before the start of the trial on January 3, 2001.
Following a jury trial, on January 5, 2001, the jury returned verdicts of guilty on each of the four counts of rape. Mr. Charley was referred for pre-sentence investigation. On February 26, 2001, a sexual predator classification hearing was held. On March 1, 2001, the trial court found Mr. Charley to be a sexual predator. This appeal followed.
 II.
Mr. Charley asserts six assignments of error. We will address them each in turn.
 A. First Assignment of Error THE TRIAL COURT ERRED WHEN IT REFUSED TO PROVIDE DEFENDANT-APPELLANT WITH SUBSTITUTE ASSIGNED COUNSEL IN VIOLATION OF DEFENDANT-APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
In the first assignment of error, Mr. Charley asserts that the trial court erred when it failed to appoint him new counsel. We disagree.
The decision to grant or deny a defendant's request for a change of counsel is reviewed under an abuse of discretion standard. State v.Blankenship (1995), 102 Ohio App.3d 534, 558. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
An indigent defendant does not have a right to counsel of his or her own choosing but rather a right to competent counsel. See Thurston v.Maxwell (1965), 3 Ohio St.2d 92, 93. This right to competent counsel does not require that a criminal defendant either develop or share a meaningful relationship with the attorney. Morris v. Slappy (1983),461 U.S. 1, 13, 75 L.Ed.2d 610, 621. Furthermore, "[m]erely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel." State v. Glasure (1999), 132 Ohio App.3d 227, 239. Rather, to discharge an attorney, the defendant must show a breakdown in the attorney-client relationship of such a degree as to place in jeopardy a defendant's right to effective assistance of counsel. State v. Coleman
(1988), 37 Ohio St.3d 286, 292. Moreover, a defendant must also be able to show prejudice which resulted from the denial of the request for new counsel. State v. Smith (Dec. 29, 1998), Lawrence App. No. 98CA12, unreported, 1998 Ohio App. LEXIS 6344, at *5; see, also, State v. Gales
(Nov. 22, 2000), Lorain App. No. 00CA007541, unreported, at 5.
In the present case, Mr. Charley was arraigned on October 17, 2000. On that date, Mr. Charley was appointed trial counsel, and the first pretrial hearing was held. At the second pretrial hearing, on November 13, 2000, Mr. Charley requested that the trial court assign him new counsel because he had not had contact with his trial counsel since the first pretrial hearing. Trial counsel acknowledged that he had not had contact with Mr. Charley since his appointment and explained that he had been waiting to contact Mr. Charley until he received discovery. At that time, the trial court acknowledged the seriousness of the situation but denied Mr. Charley's request for new counsel, holding that the court was "going to give [trial counsel] a shot[.]" The trial court informed Mr. Charley that his trial counsel would be given two weeks, and, at that point, the court would consider continuing the case to give Mr. Charley a new lawyer.
On December 13, 2000, Mr. Charley's trial counsel filed a motion to withdraw as counsel on the case, and, on December 18, 2000, a hearing was held on the matter. At the hearing, trial counsel stated that "Mr. Charley and I have a complete breakdown in communication. I'm not going to be able to prepare for [the trial] properly[.]" As explanation for the breakdown, he stated that there was a lack of trust and that he and Mr. Charley disagreed on strategy. Counsel stated: "I go to talk to him about the case, and he has a different theory of the case than I do." When asked, Mr. Charley stated that he needed a new attorney due to a conflict in interest, explaining that he and trial counsel had different approaches toward his case. Mr. Charley acknowledged, however, that, following the November 13, 2000 hearing, he and trial counsel had met with each other and made an attempt to work together.
When the trial court expressed concern over Mr. Charley's speedy trial time and the fact that new counsel would have very little time to prepare for trial, trial counsel responded that Mr. Charley might waive his right to a speedy trial if appointed new counsel. Trial counsel also stated that he could bring new counsel up to date, as he had been prepared to go to trial at the time of the original court date, December 13, 2000. On December 19, 2000, the trial court ordered trial counsel to remain as counsel, noting that Mr. Charley had not waived his right to a speedy trial and that trial was set for January 3, 2001.
In reviewing the evidence, we cannot say that the trial court abused its discretion in denying Mr. Charley's request for new counsel. Though his counsel did not make contact with Mr. Charley by the November 13, 2000 pretrial hearing, both Mr. Charley and trial counsel agreed that they had met with each other and worked together by the December 18, 2000 hearing. At such hearing, the purported reason behind the request for new counsel was their disagreement over trial strategy, and, as stated previously, such disagreement over trial tactics is not sufficient to warrant substitution of counsel. See Glasure, 132 Ohio App.3d at 239.
Moreover, assuming arguendo that the trial court did abuse its discretion, Mr. Charley has failed to demonstrate prejudice resulting from the decision of the trial court. While his attorney told the court on December 18, 2000 that he was not prepared to proceed with trial, counsel later told the trial court, on December 18, 2000, that he had been prepared to go to trial as of December 13, 2000. As Mr. Charley has neither referred to nor demonstrated any prejudice which resulted at trial, we find that Mr. Charley's assigned error is without merit. Accordingly, Mr. Charley's first assignment of error is overruled.
 B. Second Assignment of Error THE TRIAL COURT ERRED IN FINDING DEFENDANT-APPELLANT TO BE A SEXUAL PREDATOR PURSUANT TO CHAPTER 2950 OF THE OHIO REVISED CODE.
In the second assignment of error, Mr. Charley asserts that the trial court erred in finding him to be a sexual predator pursuant to R.C. Chapter 2950 for several reasons. We disagree.
Insufficient Evidence to Prove Likeliness to Engage in Future Offenses
First, Mr. Charley avers that there was insufficient evidence presented to prove by clear and convincing evidence that Mr. Charley was likely to engage in sexually oriented offenses in the future.
In order for an offender to be designated a sexual predator, the state must prove by clear and convincing evidence that the offender was convicted of or pled guilty to a sexually oriented offense, as defined in R.C. 2950.01(D), and is likely to engage in one or more sexually oriented offenses in the future. R.C. 2950.01(E) and 2950.09(B)(3); State v.Eppinger (2001), 91 Ohio St.3d 158, 161. In determining whether the offender is likely to engage in one or more sexually oriented offenses in the future, the trial court must consider all relevant factors, including, but not limited to, all of the following:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
R.C. 2950.09(B)(2).
Although the trial court must consider these guidelines in reaching its decision, the trial court retains discretion to determine what weight, if any, each guideline will be assigned. State v. Thompson (2001),92 Ohio St.3d 584, paragraph one of the syllabus. Furthermore, the trial court may consider other evidence relevant to determining the likelihood of recidivism, although the evidence is not specifically enumerated in R.C. 2950.09(B)(2). Id.
After reviewing all testimony and evidence presented at the sexual offender classification hearing and considering the R.C. 2950.09(B)(2) guidelines, the trial court must determine by clear and convincing evidence that the offender is a sexual predator. R.C. 2950.09(B)(3). Clear and convincing evidence is that which will produce a firm belief or conviction as to the matter to be established in the mind of the trier of fact. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. "In reviewing the trial court's decision, we must examine the record to determine whether sufficient evidence exists to meet the clear and convincing standard." State v. Hoagland (Apr. 11, 2001), Summit App. No. 20262, unreported, at 6.
In the present case, Mr. Charley does not dispute that he was convicted of a sexually oriented offense, namely rape, in violation of R.C.2907.02(A)(1)(b). See R.C. 2950.01(D)(1). Rather, he contends that the trial court's determination that he was likely to engage in one or more sexually oriented offenses in the future was supported by insufficient evidence as a matter of law. We disagree.
A review of the record in the case sub judice demonstrates that the trial court considered the relevant factors in determining that Mr. Charley was likely to engage in one or more sexually oriented offenses in the future and that the classification of Mr. Charley as a sexual predator is supported by clear and convincing evidence. The record indicates that K.L., who was eleven years old and in the fifth grade at the time of the incident, trusted Mr. Charley as a family friend and the nephew of her mother's fiancé. On two separate dates, Mr. Charley had sexually assaulted K.L., involving incidents of anal intercourse, oral intercourse, and vaginal intercourse. The sexual abuse came to an abrupt end when Mr. Charley's uncle, Brian Charley ("Brian"), discovered Mr. Charley and K.L. during a sexual occurrence and threw Mr. Charley out of the house. Despite the fact that Mr. Charley was caught with K.L., he has continued to deny the charges before him and does not accept any responsibility for his acts. Further, as it became clear during the sexual predator hearing, though this is Mr. Charley's first charge involving sexual conduct, he has a long and extensive criminal record. After an independent review of the record, we conclude that the trial court's decision to designate Mr. Charley a sexual predator was supported by sufficient evidence. Accordingly, Mr. Charley's argument is without merit.
Failure to Indicate Correct Standard or Consider Mandatory Factors
Second, Mr. Charley asserts that the trial court failed to indicate either that the "clear and convincing" standard of proof was applied to his determination or that the court considered the factors mandated by R.C. 2950.09(B)(2). Rather, he asserts that the trial court gave no indication as to what it considered in making its determination.
R.C. 2950.09(B)(3) provides that, "[a]fter reviewing all testimony and evidence presented at the hearing * * * and the factors specified in division (B)(2) of this section, the judge shall determine by clear and convincing evidence whether the offender is a sexual predator." Notably, R.C. 2950.09(B)(2) does not require that the trial court mention each of the statutory factors in order to make a sexual predator classification, but only that the trial court consider all factors which are relevant in making its determination. State v. Alexander (Apr. 14, 1999), Summit App. No. 18823, unreported, at 5-6.
In the March 1, 2001 judgment entry, the trial court found that Mr. Charley was a sexual predator. In doing so, the trial court noted that it made "the following findings required by R.C. 2950.06 B E as to the Defendant's status as a sexual predator." It is obvious, upon reading the judgment entry, that the reference to R.C. 2950.06 is a typographical error and that the court intended to indicate that it had considered R.C. 2950.09. R.C. 2950.06 does not address a person's classification as a sexual predator, but rather pertains to the periodic verification of an offender's current address.
As we have discussed supra, in making the sexual predator classification, the trial court's decision to designate Mr. Charley as a sexual predator was supported by sufficient evidence. Further, as it is clear that the trial court did in fact intend to refer to R.C. 2950.09, this mere typographical error is not sufficient to warrant a reversal. See, generally, Chrin v. Thudium (Sept. 1, 1999), Summit App. No. 19041, at 15. Mr. Charley's argument is without merit.
 Incorrectly Shifted Burden of Proof
Finally, Mr. Charley asserts that the trial court shifted the burden of proof at the sexual predator classification hearing, forcing him to disprove the classification. In making such assertion, Mr. Charley makes reference to a portion of the transcript which he states shows that the burden was shifted. However, Mr. Charley has taken such portion of the transcript out of context.
Prior to finding Mr. Charley to be a sexual predator, the court asked Mr. Charley if there was anything that he would like to say in relation to his potential sexual predator classification. In response, Mr. Charley stated "I didn't commit the crime that I was convicted of, and I would throw myself at the mercy of this Court, because I'm still innocent." Explaining to Mr. Charley that the jury had already convicted him of the rape charges and that the current hearing related to the sexual predator classification, the court stated "It's not a question of mercy, at this point. The Court has to follow the law, and you've given me nothing, at this point, as to why I shouldn't go along with what it is."
Rather than forcing Mr. Charley to disprove the sexual predator classification, the court was merely explaining to Mr. Charley that, in the sexual predator hearing, the court could not change the findings of the jury and that, as always, the court was bound by and could not ignore the law. This argument is without merit.
As Mr. Charley's assigned errors relating to his sexual predator classification are without merit, his second assignment of error is overruled.
 C. Third Assignment of Error THE TRIAL COURT ERRED WHEN IT PERMITTED THE STATE TO AMEND THE INDICTMENT.
In the third assignment of error, Mr. Charley avers that the trial court erred when it permitted the state to amend the indictment, changing the dates of the charge from on or about two specific days to a time period covering K.L.'s fifth grade school year. We disagree.
Crim.R. 7(D) provides that "[t]he court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." If an indictment does not contain all the essential elements of an offense, it may be amended to include the omitted element, if "the accused has not been misled or prejudiced by the omission of such element from the indictment." State v. O'Brien (1987),30 Ohio St.3d 122, paragraph two of the syllabus. Significantly, "no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted." Crim.R. 7(D).
In the case at bar, the indictment filed on September 26, 2000 alleged that Mr. Charley committed the crime of rape twice on or about April 10, 2000 and twice on or about April 17, 2000. On December 29, 2000, after Mr. Charley had filed a notice of alibi, the state filed a motion to amend the indictment due to the child's inability to recall the exact dates of the offenses. On January 3, 2001, the first day of trial, the trial court granted the motion. Mr. Charley asserts that it was error for the trial court to permit the state to change the indictment. Specifically, Mr. Charley contends that, by allowing the prosecution to amend the dates to an expanded period of time, he could no longer present his prepared alibi defense.
In the present case, the indictment adequately apprised Mr. Charley of the nature and identity of the offenses for which he was charged. Merely by asserting that the amended indictment prevented him from presenting his prepared defense, Mr. Charley has not demonstrated that he was prejudiced by the changed indictment. If, as he asserts, the amended indictment changed his expectations of what would occur at trial, he did not take any of the actions available to him to avoid this situation, such as requesting a continuance to prepare a new defense or, in the alternative, to amend his notice of alibi. See State v. Cartwright (Feb. 8, 2002), Montgomery App. No. 18723, unreported, 2002 Ohio App. LEXIS 485, at *17. Accordingly, as Mr. Charley has failed to demonstrate prejudice, his third assignment of error is overruled.
 D. Fourth Assignment of Error DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.
In his fourth assignment of error, Mr. Charley asserts that he was denied the effective assistance of counsel, both at his trial and at his sexual predator hearing. We disagree.
A criminal defendant is guaranteed a right to the effective assistance of counsel by the Sixth Amendment. See McMann v. Richardson (1970),397 U.S. 759, 771, 25 L.Ed.2d 763, 773, fn. 14. A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v. Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Lott (1990), 51 Ohio St.3d 160, 174.
In the present case, Mr. Charley asserts that he was denied the effective assistance of counsel at trial due to his damaged relationship with his attorney. Specifically, he refers to the fact that his counsel informed the court that Mr. Charley should be appointed new counsel because present counsel could not properly prepare for and conduct the defense due to the strained relationship between himself and Mr. Charley. Additionally, Mr. Charley asserts that he was denied the effective assistance of counsel at his sexual predator hearing due to this same breakdown in communication. Further, he asserts his counsel was deficient at the sexual predator hearing because he presented no evidence, other than statements made by counsel on behalf of Mr. Charley. He also asserts that counsel was deficient because he failed to object when the court inquired of Mr. Charley whether he wished to make a statement at the sexual predator hearing, without notifying him of theFifth Amendment right to remain silent.
With regard to the claim of ineffective assistance of trial counsel at trial, as noted previously, the purported reason behind the request for new counsel at the December 18, 2000 hearing was a disagreement over trial strategy. Also, at such hearing, though trial counsel initially told the court that Mr. Charley needed a new attorney because such counsel was unable to properly prepare for trial due to their disagreement over strategy, trial counsel later informed the court that he in fact had been prepared to go to trial as of December 13, 2000. Debatable trial tactics and strategies do not in and of themselves constitute a denial of effective assistance of counsel. State v. Clayton
(1980), 62 Ohio St.2d 45, 49. As Mr. Charley has pointed to no deficiency in his counsel's performance at trial but rather has implied that such deficiency must be presumed from his counsel's statements at the December 18, 2000 hearing, he has failed to establish that his counsel's performance at trial fell "below an objective standard of reasonable representation[.]" Bradley, 42 Ohio St.3d at paragraph two of the syllabus. Furthermore, Mr. Charley has not demonstrated that he was prejudiced by any alleged deficiencies with regard to counsel's performance at trial.
In addressing Mr. Charley's assigned error with regard to his counsel's performance at his sexual predator hearing, this court again notes that the reason for the request of new counsel at the December 18, 2000 hearing was the breakdown over trial strategy and that such debatable trial tactics or strategies do not constitute a denial of effective assistance of counsel. Clayton, 62 Ohio St.2d at 49. Furthermore, with regard to Mr. Charley's assertion that his counsel should have introduced evidence at his hearing, Mr. Charley has failed either to indicate what other evidence his counsel should have presented or to show whether any additional evidence would have changed the trial court's sexual predator finding. Finally, in addressing Mr. Charley's assertion that he should have been informed of his right to remain silent, this court finds that Mr. Charley has failed to demonstrate how he was prejudiced by any alleged deficiency. Prior to finding Mr. Charley to be a sexual predator, the court inquired of Mr. Charley whether he had anything that he wished to say. In response, Mr. Charley told the court that he did not commit the crime, that he had ineffective assistance of counsel, and that he had never been accused of nor committed this type of crime before. We fail to find how Mr. Charley's denial of the charges before him prejudiced his case or deprived him of a fair sexual predator hearing.
As Mr. Charley has failed to demonstrate that his counsel's performance was deficient or that he was prejudiced by any alleged deficiencies at either his trial or at his sexual predator hearing, Mr. Charley's assigned errors are without merit. Accordingly, Mr. Charley's fourth assignment of error is overruled.
 E. Fifth Assignment of Error THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT A FINDING OF GUILT.
 Sixth Assignment of Error THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
First, we will consider Mr. Charley's assertion that his convictions for rape, in violation of R.C. 2907.02(A)(1)(b), were against the manifest weight of the evidence. Next, we will address his assertion that the evidence was insufficient to sustain his convictions. Both assignments of error lack merit.
 Manifest Weight
When determining whether a conviction was against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
Mr. Charley was found guilty of four counts of rape, in violation of R.C. 2907.02(A)(1)(b), which provides that a person shall not engage in sexual conduct with another, who is not the spouse of the offender, when "[t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Mr. Charley argues that his conviction was against the manifest weight of the evidence because the only real evidence presented by the state was the testimony of K.L., which by itself was not enough to prove him guilty of the rape charges.
In the present case, D.M., the mother of K.L., testified that she lives in Lorain County with her daughter, son, and fiancé. She stated that Mr. Charley is her fiancé's nephew and explained that he used to visit her family frequently. When asked about an incident that occurred the year her daughter was in fifth grade, she testified that her fiancé, Brian, informed her that he had seen K.L., who was not wearing clothing from the waist down, and Mr. Charley together in the bedroom. D.M. stated that she questioned K.L. about the incident but did not pursue it further after K.L. denied that anything had happened.
D.M. testified that, at a later point in time, K.L. approached her in an upset and embarrassed state, revealing that she was experiencing anal bleeding. D.M. stated that K.L. told her "I'm no longer your little girl[.] * * * I'm not a virgin no more * * * [b]ecause somebody had sex with me." D.M. further testified that K.L. implicated Mr. Charley, referring to incidents of anal sex, oral sex and vaginal sex. D.M. stated that she took K.L. to the doctor on June 12, 2000, the first available appointment. She also stated that, after the appointment, she filed a complaint with the police and ensured that K.L. had been able to visit a psychologist.
Dr. Ilona Jurek testified that she had been K.L.'s family physician for five years and had always known the child to be happy and well-adjusted. However, Dr. Jurek stated that, when she saw K.L. in June of 2000, she was crying and very distraught. Dr. Jurek testified that, although not necessarily indicative of sexual activity, K.L.'s hymen was no longer intact. She stated that she found no other physical evidence during her examination, noting that one would not expect to find any evidence if the sexual activity had occurred during a prior period of time.
Patrolman Leslie Palmer of the City of Lorain Police Department testified that, on June 13, 2000, she investigated a complaint of rape. Patrolman Palmer stated that, when she arrived at the house from which the complaint originated, she met with K.L. and her mother. She testified that K.L., who was quite upset and had to stop several times because she was crying, described in detail the events leading up to the charges. Jane Robertson, a manager at Lorain County Children Services, testified that she had discussed the incidents with K.L., who was embarrassed and had a difficult time talking. Ms. Robertson stated that it is very common for a sexually abused child to delay reporting an incident of sexual abuse because there is usually a sense of fear, guilt or shame.
Brian, D.M.'s fiancé, testified that Mr. Charley is his nephew and that the two of them used to be very close friends. He stated that he discovered Mr. Charley and K.L. in "a compromising position[;]" Mr. Charley was standing behind K.L., who was naked and on her hands and knees. He further stated that he became enraged and threw Mr. Charley out of the house. Brian testified that he was very upset because he loved his nephew but that he finally decided to tell D.M. about the incident.
K.L. testified that she used to get along well with Mr. Charley and that he had often visited her family at their house. Referring to the first instance of sexual contact, she stated that she had been sitting downstairs on the couch when Mr. Charley approached her and asked her to go upstairs with him. She stated that, although she did not want to go, they went into her bedroom; she thereafter proceeded to describe the sexual acts that had taken place in the room, stating that both anal and vaginal intercourse had occurred. K.L. also testified as to the second incident in which she described acts of oral and anal intercourse, stating that she and Mr. Charley were upstairs when Brian walked in on them. When asked, K.L. stated that she did not remember the exact date of the first incident but was certain that she was eleven years old and in the fifth grade. Similarly, even though she stated that she knew the date of the second instance, which occurred not long after the first instance, she later conceded that she had always had problems remembering the dates. K.L. explained that, at first, she had not told anyone about the sexual acts because she had been afraid that she would get in trouble.
Mr. Charley testified on his own behalf. He denied his guilt and stated that Brian was lying about finding him in the room with K.L. He also testified that he had never had a fight with Brian, was never asked to leave the house, and that it was nothing more than a coincidence that he had stopped visiting the family.
After a careful review of the record, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it convicted Mr. Charley of four counts of rape, in violation of R.C.2907.02(A)(1)(b). Accordingly, we hold that Mr. Charley's convictions were not against the manifest weight of the evidence. Mr. Charley's sixth assignment of error is overruled.
 Sufficiency
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) Statev. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4. Having already found that Mr. Charley's convictions were not against the manifest weight of the evidence, we conclude that there was sufficient evidence to support the verdict in this case. Mr. Charley's fifth assignment of error is overruled.
 III.
Mr. Charley's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
BAIRD, P.J. CONCURS, CARR, J. CONCURS IN JUDGMENT ONLY